# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

JAMES KEITH BROWNING,

        Plaintiff,

v.                                    CIVIL ACTION NO.   5:14-cv-24560

HOMESITE INSURANCE COMPANY
OF THE MIDWEST,

        Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the *Defendant's Motion for Summary Judgment* (Document 67), attached exhibits, and *Memorandum in Support* (Document 68), the *Plaintiff's Response in Opposition of Defendant's Motion for Summary Judgment* (Document 69) and attached exhibits, and the *Defendant's Reply* (Document 71).   The Court has also reviewed the Plaintiff's *Complaint* (Document 1-2), originally filed in the Circuit Court of Wyoming County, West Virginia, and subsequently removed to this Court on August 8, 2014, and the Defendant's *Answer and Counterclaim for Declaratory Relief* (Document 2).   After careful consideration, the Court finds that the Defendant's motion should be granted.

## PROCEDURAL HISTORY

The Plaintiff initiated this action on July 2, 2014, with the filing of a Complaint against Defendants Progressive Specialty Insurance Agency, Inc. ("Progressive") and Homesite Insurance Company of the Midwest ("Homesite") in the Circuit Court of Wyoming County, West Virginia. (Compl., att'd as Ex. 2 to Def. Not. of Removal).   The Plaintiff alleged that the Defendant

breached an insurance contract issued by Defendant Homesite Insurance Company of the Midwest ("Homesite") by refusing to compensate the Plaintiff for the loss of his home and belongings resulting from a fire. (Compl. at ¶15-17.) In addition to claiming breach of contract, the Plaintiff sought recovery on various other state law claims, including breach of the duty of good faith and fair dealing, and violations of W. Va. Code §33-11-4(9). (*Id*. at ¶35-43.) On August 8, 2014, the Defendants removed the case to federal court based on diversity jurisdiction. (Notice of Removal, at 1-2.) On August 8, 2014, the Defendants jointly filed their answer and counterclaim for declaratory relief, wherein they denied the Plaintiff's allegations, and sought declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §2201, arguing that the Plaintiff had made material misrepresentations when securing insurance coverage on his home. (Def. Ans. to Compl. Att'd to Not. of Removal and Counterclaim for Decl. Relief, at 11-13.) On September 2, 2015, Homesite filed the present motion. The Plaintiff filed his response in opposition on September 16, 2015, and Homesite filed its' reply on September 23, 2015. On a previous date, the Plaintiff agreed to voluntarily dismiss all claims against Defendant Progressive (Document 12). Homesite's motion for summary judgment is, therefore, ripe for review.

## STATEMENT OF FACTS

The following facts are undisputed. On May 26, 2013, the Plaintiff signed a notarized instrument (the "receipt") stating that he purchased property located at 9068 Interstate Highway in Max Fork, West Virginia, (the "property") from one James Lester on May 25, 2013 for "50,000 dollars". (Notarized Receipt at 1, att'd as Ex. B to Def. Mot. for Summ. J.) (Document 67-1). Mr. Lester also signed the receipt, which was notarized by Dreama England. (*Id*.) At her deposition, Ms. England testified that she "typed up" this "contract" at the request of Mr. Lester

2

and the Plaintiff, who had written a draft which she used as the basis for the document. (D. England Dep. at 8:12-10:7, att'd as Ex. 5 to Pl.s' Resp. in Opp. to Mot. for Summ. J.) Mr. Lester, during his deposition, testified that he purchased the relevant property from "a Lester," but could not "remember how [he] did the deed on [the property]." (J. Lester Dep. at 14:7-15:14, att'd as Ex. 2 to Pl.s' Resp. in Opp. to Mot. for Summ. J.) Mr. Lester testified that he "spent ten or twelve thousand" on the property, and subsequently invested significantly more in renovations. (*Id*. at 15:15-17:24.)

On May 29, 2013, the Plaintiff contacted Homesite to inquire about purchasing a homeowners' insurance policy for the property. (Tr. of May 29, 2013 Call at 2, att'd as Ex. A to Def. Mot. for Summ. J.) (Document 67-1). During the call, the Plaintiff made a number of representations, including: (1) that he was "trying" to get a home purchased; (2) that the property was located at 9068 Interstate Highway in Max Fork, West Virginia; (3) that he was unsure of the closing date; (4) that he was unsure of the market value of the home, but that he would be purchasing the property for "about" $125,000; (5) that he "might" have a lien holder; and (6) that he had yet to sign a contract, but was "trying to finish everything up". (*Id*. at 2-10.) During the call, Homesite's agent, Ms. Ibarra, (1) indicated that she would set the closing date on the home as June 15, 2014, and that the date could "always be changed," (2) requested that the Plaintiff describe the property, and based on his description, set policy coverages of $235,000 for the home, $23,000 for "other structures," $117,500 for the Plaintiff's possessions, and $47,000 for other expenses, along with $300,000 in personal liability protection, and (3) informed the Plaintiff that "once [he] sign[ed] the contract" and set a closing date, he could "let us know" and pay the annual

3

policy premium by credit card. (*Id*.) At the conclusion of the call, Ms. Ibarra agreed to call the Plaintiff back on June 5, 2015, to "follow up" and add a closing date. (*Id*. at 10).

Two days later, the Plaintiff again contacted Homesite, and spoke with Ms. Ibarra. (Tr. of May 31, 2015 call at 1, att'd as Exhibit 1 to Pl.s' Resp. in Opp. to Mot. for Summ. J.) (Document 69-1). During this call, the Plaintiff provided Ms. Ibarra with a credit card, and instructed the agent to put the policy premium on the card. (*Id*.) Ms. Ibarra informed the Plaintiff that the policy had been paid for six months, and that he would be billed for the remaining six months. (*Id*. at 4.) Ms. Ibarra indicated that she would send the Plaintiff a receipt, and that the "policy has been issued." (*Id*. at 2.)

The Plaintiff again spoke with Ms. Ibarra on June 20, 2013. The Plaintiff informed her that he had yet to receive any policy documents. (Tr. of June 20, 2013 call at 14, att'd as Ex. C to Def. Mot. for Summ. J.) Ms. Ibarra informed the Plaintiff that the home inspection was incomplete, because the inspector had been unable to find the Plaintiff's home. (*Id*.) After confirming the Plaintiff's address, Ms. Ibarra indicated that she would communicate with her supervisor about scheduling a home inspection, that "th[e] policy was issued May 31," and that despite the absence of an inspection, "…the policy has not been cancelled." (*Id*. at 15-17.) According to Ms. Ibarra, the Plaintiff would "receiv[e] the policy" by the end of June, 2013. (*Id*. at 17.) The Plaintiff noted in passing that "[w]e were just trying to get everything taken care of at the lawyer's office and they was[sic] needing some kind of verification on insurance …" (*Id*.) During the call, the Plaintiff informed Ms. Ibarra that he was not currently living at the property in question, but rather, was living with his mother in Hanover, West Virginia. (*Id*. at 15.) The policy, as issued, excluded coverage where the insured "intentionally concealed or misrepresented

4

any material fact or circumstance," "engaged in fraudulent conduct" or made false statements. (Def. Mem. in Supp. of Mot. for Summ. J., at 4.)

On August 1, 2013, James Lester executed a Deed of Conveyance, wherein his parents, Russell and Amanda Lester, conferred the property at issue in this case to him for $10, and "other valuable consideration not herein mentioned." The Deed made no mention of any subsequent conveyances, to the Plaintiff or otherwise. (Deed of Conveyance, att'd as Ex. D to Def. Mot. for Summ. J., at 1.) The Deed of Conveyance was prepared by Pamela Lambert, Counsel for the Plaintiff in this case, and notarized by Renee Jones. (*Id*. at 2.) The Deed indicated that the total consideration paid for the property was $10,000. (*Id*.) The Deed was subsequently recorded in the Offices of the Clerk of the County Commission for Wyoming County, West Virginia, on August 13, 2013. (*Id*.) On August 17, 2013, a fire consumed the property. (Letter to Plaintiff at 1, att'd as Ex. 4 to Pl.s' Resp. in Opp. to Mot. for Summ. J.) On August 27, 2013, James Lester signed a second Deed of Conveyance, conveying the same property to the Plaintiff in exchange for $10 and "other valuable consideration not herein mentioned." (Deed of Conveyance at 1, att'd as Ex. E to Def. Mot. for Summ. J.) This second Deed of Conveyance notes that the property was transferred to James Lester on **August 1, 2012**, that the total consideration paid by the Plaintiff was $50,000, and was also prepared by Lambert. However, it also references the deed being recorded in Deed Book 462 at page 876, which is the same deed entered into between James Lester and Russell and Amanda Lester on **August 1, 2013**. (*Id*. at 1-2.) The Browning/ Lester deed was later recorded on November 14, 2014, with the Office of the Clerk of the County Commission for Wyoming County, West Virginia. (*Id*.)

5

The Plaintiff submitted to an examination under oath by Homesite on November 5, 2013. During that examination, the Plaintiff testified that he paid $50,000 in cash for the property at issue in this case. (J. Browning Examination at 45:11-13, att'd to Def. Mot. for Summ. J.) Asked where he accumulated the assets, the Plaintiff testified that he had " … saved a little bit here and there." (*Id*. at 45:15-16.) The Plaintiff testified that he had no appraisements of any property contained in the house, no photographs of the premises, and no copies of the relevant insurance policy, and had not completed a Proof of Loss and Inventory Form, as requested by Homesite. (*Id*. at 46:17-48:24.) On November 26, 2013, Homesite sent the Plaintiff a letter, wherein Homestead indicated that because the Plaintiff made material misrepresentations in connection with the issuance of his policy, Homestead was rescinding the policy and declaring the policy as void since inception, and denying the Plaintiff's claim. (Letter to J. Browning at 1, att'd as Ex. 4 to Pl.s' Resp. in Opp. to Mot. for Summ. J.) In the letter, Homesite indicated that the Plaintiff purportedly entered into a contract with James Lester on May 26, 2013, informed Homesite on May 29, 2013, that there was no contract, and then received a deed to the property on August 27, 2013, after the property had been destroyed by the fire. (*Id*.) Thus, Homesite declared that the Plaintiff "provided false information" when purchasing the policy, "and/or submitted a fraudulent contract in conjunction with the insurance," while also "secur[ing] insurance on a home [he] did not own." (*Id*.)

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

6

56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar.

31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

Homesite moves for summary judgment on their counterclaim for a declaratory judgment. In so moving, Homesite make two arguments. Initially, it argues that the Plaintiff had no insurable interest in the property, and secondly, it claims that the Plaintiff made material misrepresentations in purchasing the policy. Under either theory, Homesite argues that the policy was void, and therefore, they have no obligation to pay the Plaintiff's claim.

### *Insurable Interest*

Homesite claims the Plaintiff lacked an insurable interest in the property at the time of the fire. To support this argument, the Defendant focuses on the absence in the record of any contract for sale of the property between Mr. Lester and his predecessors in interest. The Defendants acknowledge that West Virginia law allows the holder of equitable title to property to transfer that interest prior to the "conveyance of legal title," but argue that under the West Virginia statute of frauds, any such conveyance must be memorialized by a written contract for sale signed by, at a minimum, the purchaser. *(*Def. Mem. in Supp. of Mot. for Summ. J.*,* at 8.) According to Homesite, the only record of any transaction wherein Mr. Lester purchased the property is the

8

Deed of Conveyance of August 1, 2013. Any prior oral agreement wherein Mr. Lester purchased the property, in Homesite's view, would be barred by the statute of frauds. (*Id*.) Thus, Homesite claims that Mr. Lester had no equitable title to convey to the Plaintiff, and Plaintiff, therefore, had no insurable interest in the property at the time the policy was purchased. (*Id*.) Homesite also argues that the doctrine of after-acquired title does not protect the transaction, because the August 1, 2013 Deed of Conveyance does not demonstrate any intent to transfer title to the Plaintiff. (*Id*.)

In response, the Plaintiff argues that he clearly had equitable title to the property as of May 26, 2013, and therefore, had an insurable interest in the property at the time of the fire. (Pl.s' Resp. in Opp. to Mot. for Summ. J., at 7.) The Plaintiff emphasizes that he purchased the property on or before May 26, 2013, and that on that date, he and Mr. Lester requested that a notary, Ms. England, prepare a receipt to that effect. (*Id*. at 9.) According to the Plaintiff, the resulting receipt, signed by himself and Mr. Lester, satisfies the statute of frauds, as it "is a note or memorandum of the contract, it is in writing, and it is signed by James Lester." (*Id*. at 9.) The Plaintiff also emphasizes that the seller, Mr. Lester, held "equitable title" to the property as of May 26, 2013, and that equitable title was transferred to the Plaintiff, as reflected by the receipt. (*Id*.) Thus, the Plaintiff argues that he clearly had an insurable interest in the property at the time the insurance policy was issued. (*Id*.)

West Virginia law states that a property insurance contract is only enforceable if the insured party has an "insurable interest" in the property covered by an insurance policy. W. Va. Code §33-6-3(a). An "insurable interest" is "any actual, lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." W. Va. Code §33-6-3(b). The "measure of an insurable interest in

9

property" is the degree "to which the insured might be damnified by loss, injury, or impairment thereof." W. Va. Code §33-6-3(c). Absent an insurable interest, the policy is void. *Filiatreau v. Allstate Ins. Co.*, 178 W.Va. 268, 270 (1987); *Shaffer v. Calvert Fire Ins. Co.*, 135 W.Va. 153 (1950).

In the context of a homeowners' insurance policy, an "insurable interest" requires that the insured possess either equitable or legal title to the insured property. *Filiatreau*, 178 W.Va. at 270. In the absence of legal title, a contract for the purchase of a property provides the purchaser with equitable title to the property, sufficient to "insur[e] it against loss by fire." *Scott v. Dixie Fire Insurance Co.*, 70 W.Va. 533 (1912); *see also Young v. McIntyre*, 223 W.Va. 60, 64 (2008) ("After the execution of a valid contract of sale and before legal title passes by deed, the vendor is regarded in equity as holding the legal title in trust for the vendee, and the latter as holding the purchase money in trust for the vendor.") When the contract is signed, the risk of loss on the property passes from the seller to the buyer. *Filiatreau*, 178 W.Va. at 271, citing *Maudru v. Humphreys*, 85 W.Va. 307, 310 (1919). However, "a buyer can acquire nothing more than the seller owns and can convey." *See Wellman v. Tomblin*, 140 W.Va. 342, 345 (1954).[1] Under the West Virginia statute of frauds, any such contract for the purchase of land must be "in writing and signed by the party to be charged thereby," but the consideration for the transaction "need not be set forth or expressed in the writing." W. Va. Code §36-1-3. The purpose of the statute of frauds is to "prevent the fraudulent enforcement of unmade contracts, not the legitimate enforcement of contracts that were in fact made." *Heartland, L.L.C. v. McIntosh Racing Stable, L.L.C.*, 219 W.Va.

---

[1] While a seller may, under certain circumstances generally limited to inheritances and wills, convey property absent ownership under the doctrine of after-acquired title, such conveyance requires a "clear intention to convey all interest in certain described property" which the buyer may "hereafter acquire or take." *Wellman*, 140 W.Va. at 347 (quotations and citations omitted).

10

140, 149 (2006), citing *Timberlake v. Helfin*, 180 W.Va. 644, 648 (1989). As such, the Supreme Court of Appeals of West Virginia has observed that "T]he statute [of frauds] ... does not require an exhaustive, integrated statement of the agreement in writing, but only a sufficient statement to establish that there in fact was an agreement and that the party charged should be bound by it." *Id*., citing Richard A. Lord, 10 Williston on Contracts §29.4 at 437-38 (footnotes and citations omitted). In general, only those who are party to a contract may raise the statute of frauds to a defense to a claim arising from the contract. *Tanner v. McCreary*, 88 W.Va. 658 (1921) ("It is almost universally held that the defenses arising under the statute of frauds are personal to the parties to the contract, and no one else can take advantage of them or require the parties to do so.")

It is undisputed that the Plaintiff did not have legal title to the property when Homesite issued the insurance policy on the property in late May or during June 2013, as legal title did not vest with the Plaintiff until August 27, 2013. Therefore, to determine if the Plaintiff had an insurable interest in the property at the time the insurance policy was issued, the Court must determine whether the evidence presented could permit a fact-finder to determine that the Plaintiff had equitable title to the property. The Plaintiff argues that he obtained equitable title to the property by virtue of his agreement to purchase the property from Mr. Lester, memorialized by the receipt dated May 26, 2013. However, a threshold question is whether Mr. Lester had any title, equitable or legal, to convey to the Plaintiff at that time. If Mr. Lester lacked legal or equitable title in the property on May 26, 2013, he clearly could not have conveyed any interest in the property to the Plaintiff.

Mr. Lester did not acquire legal title to the property until August 1, 2013, well after he purportedly sold the property to the Plaintiff. Therefore, the Court must determine if there is a

genuine issue of material fact as to whether Mr. Lester had equitable title. Under West Virginia law, equitable title depends on the execution of a valid contract of sale which complies with the statute of frauds, such that the purchaser acquires a protectable interest in the property. Mr. Lester testified that he "think[s] [he] might have signed a contract or whatever" and that he "d[idn't] even know actually where" the contract was. (J. Lester Dep. at 11-20, att'd as Ex. 2 to Pl.s' Resp. in Opp. to Mot. for Summ. J.)

Viewing the evidence in the light most favorable to the Plaintiff, the Court finds that no rational tier of fact could determine that Mr. Lester had equitable title to the property on May 26, 2013, at the time he and the Plaintiff signed the "receipt." Lester provides no contract and only thinks he "might" have signed one. His deposition provides no substantive information about the nature of the transaction by which he acquired equitable title to the property. Absent equitable title, Mr. Lester had no interest in the property and, therefore, was clearly unable to convey any interest to the Plaintiff on May 26, 2013. Thus, the Plaintiff had no insurable interest in the property when he purchased the policy. With no insurable interest, the policy was void. Because the Court finds that even when viewing the evidence in the light most favorable to the Plaintiff, there is no genuine dispute of material fact, presented by the evidence, that Mr. Lester possessed equitable title and was able to deliver the same to the Plaintiff on May 26, 2013, it is unnecessary to address the remaining grounds on which Homesite seeks summary judgment.

**CONCLUSION**

Wherefore, following thorough review and careful consideration, the Court **ORDERS** that the *Defendant's Motion for Summary Judgment* (Document 67) be **GRANTED** as to the Defendant's counter-claim for declaratory relief.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

        ENTER:       December 16, 2015

*[signature]*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA